UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------
:
CAROL GOREY, *on behalf of herself* :
*and all others similarly situated*, :
: CASE NO. 7:10-CV-1132
        Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. Nos. 131; 134]
MANHEIM SERVICES CORPORATION, :
*et al.*, :
:
        Defendants. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this conditionally certified Fair Labor Standards Act ("FLSA") collective action, both sides move for summary judgment. Plaintiff Carol Gorey moves on behalf of herself and fifty-five opt-in Plaintiffs (collectively the "Plaintiffs").[1] [Doc. 138.] The Defendants, who through various legal entities operate a nationwide network of Manheim auto auctions, (collectively "Manheim"), cross move for summary judgment. [Doc 145.]

For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the

---

[1] Plaintiff Gorey initially moved for summary judgment solely on her claims, not on behalf of the opt-in Plaintiffs. [Doc. 138.] Two weeks later, the opt-in Plaintiffs cross-moved for summary judgment through a footnote in Plaintiff's opposition to Defendants' motion for summary judgment. [Doc. 164 at 2 n.2.] Although the opt-in Plaintiffs' motion is untimely, the Court will consider it. The harm to the Defendants, they argue, is that the Plaintiff and opt-in Plaintiffs are not similarly situated. [Doc. 178 at 2 n.1.] The Court will address this issue in its decision on whether to decertify the class. Furthermore, the Defendants themselves moved for summary judgment against all the Plaintiffs—not just Gorey—assuming "*arguendo* that Plaintiff's testimony [that all the Plaintiffs are similarly situated] is true for purposes of this motion for summary judgment only." [Doc. 145 at 4 n.4] (emphasis in original).

Case No. 7:10-CV-1132
Gwin, J.

Plaintiffs' motion for summary judgment, and **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion for summary judgment.

## I. Background

Plaintiff Carol Gorey filed this collective action complaining that Manheim improperly classified her and the opt-in Plaintiffs as overtime exempt under the FLSA. Plaintiff Gorey makes a similar claim under New York state law. [Doc. 42.] Responding, Manheim says the Plaintiffs are properly classified as exempt from federal and state overtime and wage laws because their primary job duties involve outside sales, administrative tasks, or a combination of the two. [Doc. 145 at 2.]

Manheim operates more than seventy automobile auctions across the country and around the world. Manheim's customers are dealers, banks, fleet companies, and manufacturers who come to bid on cars to replenish their inventory or to sell excess stock. Manheim makes money on both ends, receiving a fee when its customers buy or when its customers sell cars. When cars are sold at the auction, the buyer, the seller, and Manheim sign a three-way contract. Manheim also offers transportation, reconditioning, repair, inspection, finance, and key-replacement services. [Doc. 132 at 5-6.]

Manheim employs "inside" and "outside" sales representatives to assist with its auctions and promote its services. Inside sales representatives—who are not the subject of this lawsuit—work on the lot administering auctions, helping customers, and soliciting business for the auction over the phone. When inside sale representatives work more than forty hours a week, Manheim pays them overtime as "non-exempt" employees under the FLSA. [Doc. 132 at 12.]

On the other hand, outside sales representatives (who are sometimes generically called dealer sales representatives) leave the auction lot and travel to dealer locations to "bring[] new business"

Case No. 7:10-CV-1132
Gwin, J.

to their respective Manheim location. [Doc. 132 at 12.] Although each outside sales representative describes the purpose of these trips somewhat differently, they seek to get dealers to the auction lot to buy and sell vehicles, which in turn drives up the representatives' commissions. *See e.g.*, [Doc. 132 at 19-21 ("As an [outside sales representative] my main duty has been to travel around and visit motor vehicle dealers at their place of business and to sell the services of Manheim . . . and the use of its facilities.").].

Unlike inside sales representatives, Manheim classifies its outside sales representatives as "exempt" and does not pay them extra for overtime. [Doc. 132 at 13.] Instead, it pays these employees a fixed salary with the opportunity to earn extra commissions. For instance, in 2008 Plaintiff Gorey's base salary was $57,000; her total commissions were $20,000. [Doc. 149-38.] Gorey and the other outside sales representatives earn commissions when a dealer they cover sells a vehicle at the auction, and earn more money the quicker the vehicle sells. In 2009, for example, Manheim paid these commissions:

(1) Each car sold day 1 to day 30 ................................................................$10

(2) Each car sold day 31 to day 60 ...............................................................$9

(3) Each car sold day 61 and up ..................................................................$3

[Doc. 149-37] Although the commission structure varies by year and location—Gorey earned up to $20 a car in 2008—the outside sales representatives describe their cumulative commissions as "substantial," and at least one representative earned more in commission than he did in base salary. [Doc. 132 at 16; Doc. 149-35.]

Manheim auctions typically charge dealers $200 if their vehicle sells above $2500, $75 if it sells below that mark, and nothing if the bidding does not reach the reserve price. [Doc. 149-11;

Case No. 7:10-CV-1132
Gwin, J.

Doc. 149-12.] Depending on the dealer, the outside sales representatives have some ability to negotiate a different fee schedule or to include some ancillary services at no charge. For example, Plaintiff Gorey offered one dealer free pick-up service for the vehicles the dealer sent to auction (while charging a different dealer $20 for pick up from that same city), and also offered a dealer a $20 rebate on each vehicle if it sold more than fifty at the auction. [Doc. 149-10.]

Manheim's outside sales representatives work off the lot visiting new and existing dealers four days a week or "80%" of the time. [Doc. 132 at 22.] Given the amount the outside sales representatives travel, Manheim does not actively monitor their hours or day-to-day schedule. *See e.g.*, [Doc. 132 at 22 ("Given that I am usually away from [the auction] traveling to customers, alone in most cases, I have no direct supervision by . . . management on most days."] Nonetheless, the outside sales representatives all agree that they work more than forty hours a week, on average. [Doc. 132 at 22, 23.] Gorey, for example, says she routinely put in eighty-hour work weeks.

Each Manheim auction holds a weekly sale day. On this day the outside sales representatives are back on the lot "assisting dealers in getting cars set up for auction." [Doc. 132 at 26.] Outside sales representatives, for example, advocate on behalf of their respective dealers to the auctioneers to get their dealers earlier "lane position." Earlier lane position is important to dealers because it gives them a better opportunity to sell, as more people bid at the beginning of the auction than at the end. [Doc. 132 at 27.] Lane position is important to the outside sales representatives, as well, because their commissions are contingent upon their dealers' vehicles actually selling at the auction. [Doc. 132 at 28.]

Against this backdrop, the Plaintiffs move for summary judgment on their claim that the Defendants withheld overtime pay in violation of the FLSA, 29 U.S.C. § 201 *et seq.*, which states

-4-

Case No. 7:10-CV-1132
Gwin, J.

that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation . . . at a rate not less than one and one-half times the regular rate." [Doc. 42 at 14.] Plaintiff Gorey also moves for summary judgment on behalf of a putative class of Manheim's New York employees alleging a violation of the equivalent New York state law, and a violation of New York's "spread of hours" regulation, which requires an employer to pay an employee a premium equal to one hour's pay at New York's minimum wage for each workday that lasts longer than ten hours. [Doc. 42 at 15-16]; N.Y. Lab. Law § 650 *et seq.*, N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2.

## II. Legal Standard

### 1. *Summary Judgment*

Summary judgment is appropriate where the evidence submitted shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *McPherson v. Coombe*, 174 F.3d 276, 279–80 (2d Cir. 1999).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997). Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### 2. *The FLSA and New York State Wage Law*

Case No. 7:10-CV-1132
Gwin, J.

The FLSA includes an "overtime requirement" that an employer pay an employee "a rate not less than one and one-half times the regular rate at which he is employed" for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1).

There are numerous exceptions to this general rule. *See* 29 U.S.C. § 213(a) (varying from "white-collar" executives to babysitters). However, "[b]ecause the FLSA is a remedial law, exemptions to the overtime pay requirement are narrowly construed against the employers seeking to assert them and their application is limited to those establishments plainly and unmistakably within their terms and spirit." *In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010) (internal quotations and citations omitted). "The burden of proving that employees fall within such an exemption is on the employer." *Id.*

New York law governing overtime pay is defined and applied in the same manner as the FLSA. *See* 12 N.Y.C.R.R. § 142-2.14; *see also* 12 N.Y.C.R.R. § 142-2.2 (New York overtime requirements are "subject to the exemptions" of the FLSA). Moreover, the parties agree that there is no relevant difference between the relevant provisions of the FLSA and New York law. Consequently, in the discussion that follows, the Court will analyze the applicability of the FLSA and New York exemptions together.

### III. Analysis

*1. Outside Salesman and Administrative Employee Exemptions*

Relevant here are the FLSA's "outside salesman" and "administrative" employee exemptions. *See* 29 U.S.C. § 213(a)(1). Manheim first argues that the Plaintiffs are outside salesmen who "sell auction services and the use of its facilities" and there "is no doubt that an [outside sales representative] has made the sale when he/she exits a dealership with an agreed fee structure for the vehicles that customer will bring to the auction." [Doc. 145 at 6-7.] Manheim also

Case No. 7:10-CV-1132
Gwin, J.

argues that the Plaintiffs are exempt under the "administrative" employees exemption saying they exercise discretion and independent judgment when performing work related to Manheim's auctions. [Doc. 145 at 10.] In light of the Second Circuit's recent decisions in *In re Novartis Wage & Hour Litig.*, 611 F.3d 141 (2d Cir. 2010) (pharmaceutical sales representatives not exempt under the outside salesmen exemption) and *Reiseck v. Univ. Comm. of Miami, Inc.*, 591 F.3d 101 (2d. Cir. 2010) (sales director tasked with selling advertising space not exempt under the administrative exemption), Manheim's arguments fail.

> The outside salesmen exemption removes from the overtime pay requirement employees:
>
> (1) Whose primary duty is: (i) making sales within the meaning of Section 3(k) of the Act; or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
> (2) Who is primarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a). "Employees have a primary duty of making sales if they 'obtain a commitment to buy' from the customer and are credited with the sale." *In re Novartis Wage & Hour Litig*, 611 F.3d at 152 (quoting Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,162–163 (Apr. 23, 2004)).

The FLSA also exempts from overtime pay "any employee employed in a bona fide . . . administrative . . . capacity." 29 U.S.C. § 213(a)(1). To be such an "administrative" employee:

> (1) the employee must earn at least $455 a week, (2) his "primary duty" must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) his "primary duty" must "include[] the exercise of discretion and independent judgment with respect to matters of significance," 29 C.F.R. § 541.200(a); *see, e.g.*, *id*. § 541.201 (elaborating on the second criterion); *id*. § 541.202 (elaborating on the third criterion).

*In re Novartis*, 611 F.3d at 155.

-7-

Case No. 7:10-CV-1132
Gwin, J.

The phrase "directly related to the management or general business operations of the employer or the employer's customers" describes those types of activities relating to the administrative operations of a business. 29 C.F.R. § 541.205(A). "Administrative operations" include "advising the management, planning, negotiating, representing the company, purchasing, *promoting sales*, and business research control." *Id.* § 541.205(b) (emphasis added); *see also Reiseck*, 591 F.3d at 106-07.

In this case, Manheim has not met its burden of proving that its outside sales representatives fall within the outside salesmen exemption, the administrative exemption, or a combination of the two. And because the Plaintiffs' daily job duties are undisputed, nor has Manheim set forth sufficient facts showing a triable dispute on these exemptions. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986) (how employee spends his or her working day is question of fact; whether employee's particular work "excludes them from overtime benefits of the FLSA is a question of law."). The Court thus grants the Plaintiffs' motion for summary judgment on their FLSA and New York labor and wage claims.

As to the outside salesmen exemption, the Plaintiffs contend that they do not "sell" anything because they do not—and cannot—consummate their own sales, which they say occur only after a dealer brings its cars to the auction lot and the dealer and a third-party buyer agree on a price at auction. [Doc. 138 at 9.] Responding, Manheim argues that the outside sales representatives "obtain orders or contracts for services or for the use of facilities" and thus are properly classified as overtime exempt. [Doc. 178 at 4.] Manheim also says that when the outside sales representatives convince dealers to come to the auction to buy or sell vehicles "that alone demonstrates the sale of services and facilities," [Doc. 159 at 3], and when dealers agree to the fee structure "for the vehicles that customer will bring to the auction" there is "no doubt [the outside sales representative] has made

-8-

Case No. 7:10-CV-1132
Gwin, J.

the sale," [Doc. 145 at 7].

Recall, employees make a sale if they "obtain a commitment to buy" from the customer and are "credited with the sale." *In re Novartis Wage & Hour Litig*, 611 F.3d at 152. But here, Manheim shows only some relatively vague assurances that dealers will deliver some relatively vague number of cars to the auction sometime in the future. Recognizing that it shows no evidence of any commitment (let alone a binding contract) with dealers that Manheim could enforce if the dealer elected not to use the Manheim auction, the Defendants suggest that even though a "dealer might change his or her mind as to whether or how many cars to consign" to Manheim, the dealer has still made a "commitment to buy." If the dealers commit to anything—which the Defendants have not proven they do—it is to Manheim's standard (or sometimes reduced) pricing terms, not to use Manheim's auction facilities or to purchase ancillary services. [Doc. 145 at 6]; *see also In re Novartis Wage & Hour Litig*, 611 F.3d at 154 ("although physicians may say that they will prescribe a given Novartis drug . . . , such an assurance is not a binding commitment, and physicians remain entirely free to prescribe a competing product made by a company other than Novartis."). Thus, because the Plaintiffs do not "obtain a commitment to buy," the Court finds that the Defendants have not established the outside salesmen exemption.

Moreover, even if the Court took a different position and found that an order, contract, binding commitment, or sale occurs when the dealers make oral representations to bring an undetermined amount of cars to the auction—and it does not—this still does not transform the outside sales representatives into "outside salesmen" under the FLSA. Again, the alleged "commitments to buy" are the dealers' assurances that they will deliver cars to the auction. Yet as the Manheim commission structure makes clear, the outside sales representatives are not "credited" for convincing a dealer to consign cars to the auction. Rather, the representatives are credited—in

-9-

Case No. 7:10-CV-1132
Gwin, J.

this case, through commissions—only after (and if) their dealers' cars sell at auction; this prospect of future credit is too attenuated from the alleged moment of sale to be considered a credit from the sale. Accordingly, for this alternative reason, the Defendants have not met their burden of establishing that the Plaintiffs are exempt under the outside salesmen exemption to the FLSA.

Nor have the Defendants met their burden of establishing that the administrative employees exemption applies to the Plaintiffs. The Defendants argue—and the Plaintiffs dispute—that the Plaintiffs' primary duties as outside sales representatives are directly related to management policies or general business operations. According to the Defendants, "[e]ven under the [Plaintiffs'] untenable position that [outside sales representatives] do not 'sell,' they are at least promoting the auction by explaining the services to potential customers and soliciting their business and assisting them with the consignment process." Thus, the Defendants say, because the Plaintiffs promote sales generally they are administrative employees exempt from overtime under the FLSA.

The parties agree that the outside sales representatives' primary duty is to meet "with dealers to sell them the services and facilities of the auction." [Doc. 159 at 3.] The legal question for the Court, then, is whether Plaintiffs are "salespersons," who are non-exempt employees under the FLSA, or "sales promoters," who are exempt from overtime under the administrative-employees provision. *See Reiseck v. Univ. Comm. of Miami, Inc.*, 591 F.3d 101, 105-08 (2d. Cir. 2010). In *Reiseck* the Second Circuit explained the distinction:

> [A]n employee making specific sales to individual customers is a salesperson for the purposes of the FLSA, while an employee encouraging an increase in sales generally among all customers is an administrative employee for the purposes of the FLSA. Consider a clothing store. The individual who assists customers in finding their size of clothing or who completes the transaction at the cash register is a salesperson under the FLSA, while the individual who designs advertisements for the store or decides when to reduce prices to attract customers is an administrative employee for the purposes of the FLSA.

-10-

Case No. 7:10-CV-1132
Gwin, J.

*Id*. at 108.

In this case, because the Plaintiffs primary duty is to promote sales to individual customers instead of promoting sales generally, the Plaintiffs are non-exempt salespersons under the FLSA. To be sure, the Plaintiffs spend one day a week back on the lot assisting their dealers at auction, and also spend some time generally promoting Manheim's business at trade shows and "becoming a dealer's trusted adviser" through all stages of the auction process. Nonetheless, the Plaintiffs' undisputed primary duty is to identify and convince specific dealers, in a defined territory, to use Manheim's auction and ancillary services. The Plaintiffs here do not "encourag[e] an increase in sales generally among all customers" by "marketing, servicing, or promoting" Manheim's services. *See id.* Rather, outside sales representatives only interact with *their* dealers, and only receive commission from their dealers' sales. And although the Plaintiffs have some ability to negotiate pricing with their individual dealers, they do not evaluate or set Manheim's general pricing structure to determine its competitiveness in an effort to increase sales generally.

Accordingly, because the Plaintiffs' primary duty is not related to the administrative operations of Manheim's business, they do not fall under the administrative exemption to the overtime pay provisions of the FLSA. Thus, the Court need not inquire whether the Plaintiffs' work requires "the exercise of discretion and independent judgment," because the test requires both that the employees' primary duty be administrative and that the employees' work involve the exercise of discretion. *Id*. at 108 (citing 29 C.F.R. § 541.2(e)(2)).

The fact that the Plaintiffs do not actually "obtain a commitment to buy" from the dealers for which they are "credited with the sale," as discussed in the Court's outside salesmen analysis, does not affect this analysis. It may seem counterintuitive that the Plaintiffs can be out selling Manheim's auction and ancillary services but not fit within the "outside salesmen" or

-11-

Case No. 7:10-CV-1132
Gwin, J.

"administrative employees promoting sales generally" exemptions, but these are narrow exceptions to the general rule that employees are entitled to overtime pay that are narrowly construed.

### *2. Statute of Limitations*

Ordinary violations of the FLSA are subject to a two-year statute of limitations. To obtain the benefit of the three-year exception, the employee must prove that the employer's conduct was "willful." 29 U.S.C. § 255(a); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1061 (2d Cir.1988). In the Court's order conditionally certifying this FLSA collective action, the Court "[o]ut of an abundance of caution, without making any merit-based statute of limitations determinations at this time, . . . conditionally certif[ied] class members employed by Manheim over the past three years." *Gorey v. Manheim Services Corp. et al*, No. 7:10-CV-1132, 2010 WL 5866258, at *6 (S.D.N.Y. Nov 10, 2010).

In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988), the Supreme Court, in reviewing a claim under the FLSA, held that an employer acts willfully when he or she "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." The *McLaughlin* Court added that "[i]f an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful . . . . If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then ... it should not be . . . considered [willful.]" *Id.* at 135 n.13.

In this case, the Defendants have presented sufficient evidence to satisfy their initial burden of showing the absence of a genuine dispute to an essential element of the non-moving party's case. Namely, that "Manheim . . . considers the status of its employees at the time of hire, and has made a good faith and reasonable determination that [outside sales representatives] are exempt. Until this litigation, this determination had never been criticized by an [outside sales representative] or any government entity." [Doc. 178 at 6.] Responding, the Plaintiffs present no evidence of wilfulness,

-12-

Case No. 7:10-CV-1132
Gwin, J.

but rather argue that the "Defendants have offered no tenable reason why the issue of willfulness should be decided at this juncture, or why this Court should take the willfulness issue out of the hands of the jury." [Doc. 164 at 11.] The Plaintiffs' mere allegations or denials, of course, do not set forth specific facts showing a triable dispute, and thus are insufficient to survive the Defendants' motion for summary judgment on this issue.

The Court therefore culls the conditionally certified collective action to those employees employed "on or after October 22, 2008, " instead of October 22, 2007. Of the 638 current and former outside sales representatives sent notice of this lawsuit, fifty-five opted in. [Doc. 132 at 1.] Of the original fifty-five opt-ins, only thirty-two were employed on or after October 22, 2008, [Doc. 132 at 1], and only these thirty-two opt-in Plaintiffs will remain part of this collective action.[2/]

Current opt-in Plaintiffs who no longer fit within this collective action are dismissed from the case without prejudice. The now-dismissed opt-in Plaintiffs may choose to bring suit on their own, with counsel who can present sufficient evidence of wilfulness.

### *3. The Proper Defendants*

The remaining Plaintiffs to this lawsuit are all current and former employees of either Manheim Remarketing, Inc., a current defendant, or Manheim Investments, Inc., an entity who has not yet been sued. [Doc. 132 at 2 n.2.] These two entities are the proper defendants to this case, and the Court will grant the Plaintiffs leave to amend their complaint to include Manheim Investments, Inc., if the Plaintiffs so choose. Nonetheless, the Plaintiffs allege that Cox Enterprises and Manheim, Inc.—the Plaintiffs' employers' corporate parents—are jointly liable for Manheim Remarketing's and Manheim Investments' violation of the FLSA. The Plaintiffs' arguments fail.

---

[2/] Plaintiffs do not allege that any of these Plaintiffs have New York state law claims. Under New York law, the statute of limitations for claims for wages is six years. N.Y. Lab. Law § 198(3).

-13-

Case No. 7:10-CV-1132
Gwin, J.

First, the Plaintiffs argue that all the Defendants are a "single enterprise for purposes of the FLSA" under 29 U.S.C. § 203(r)(1). Section 203(r)(1) merely defines the term "enterprise" as part of the larger phrase "enterprise engaged in commerce" within § 203(s)(1). These provisions together are meant to broaden the FLSA's coverage to include employees who themselves do not work in interstate commerce, but their "enterprise" employer does. *See Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 516-17 (1973). Thus, while § 203(s)(1) can bring an entity under the coverage of the FLSA, it is not the proper method to impose joint-employer liability. Rather, courts in this Circuit apply the "economic reality" theory of joint employment.

Under the economic reality theory, a court looks to the totality of the facts and circumstances of the case to determine whether an entity is an "joint employer" of the plaintiff-employees within the meaning of the FLSA, 29 C.F.R § 791.2. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir.1999). The relevant factors include whether the entity (1) was able to hire and fire the employees, (2) controlled work schedules or employment conditions, (3) determined the rate or method of payment, and (4) maintained employment records. *Id*.

Here, there is no evidence that Cox Enterprises or Manheim, Inc. (the corporate parents) hired or fired any of the Plaintiffs or, for that matter, any outside sales representatives. Indeed, according to the Plaintiffs, the corporate-parent Defendants are three steps removed: Cox and Manheim, Inc. hire "regional managers" who supervise "general managers that work at the local auctions" who, in turn, supervise the outside sales representatives. [Doc. 164 at 19.] By extension, Cox and Manheim, Inc. do not control the work schedules or employment conditions of the Plaintiffs. And, finally, the corporate-parent Defendants do not determine the Plaintiffs rate of pay. *See* [Doc. 164-9 (job descriptions for outside sales representatives prepared by the corporate-parent Defendants that leave the "Salary/Grade" field blank).

-14-

Case No. 7:10-CV-1132
Gwin, J.

Thus, because the Plaintiffs have not presented sufficient evidence that the "alleged employer[s] possessed the power to control the workers in question," *Herman*, 172 F.3d at 139, the Court grants summary judgment to all Defendants except Manheim Remarketing, Inc., Manheim Investments, Inc., and their d/b/a denominations.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Plaintiffs' motion for summary judgment, and **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion for summary judgment.

IT IS SO ORDERED.

Dated: May 13, 2011

JAMES S. GWIN
UNITED STATES DISTRICT JUDGE